IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEANGELO DONTERIOUS EDWARDS, )<br>a.k.a. DeAngelo Edwards-Bey, )<br>#271278, )<br> )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>J. SEWELL, )<br> )<br>    Defendant. ) | CASE NO. 2:21-CV-79-RAH-SMD |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.     INTRODUCTION

Plaintiff DeAngelo Donterious Edwards, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action alleging several of his constitutional rights were violated when Defendant J. Sewell, the Institutional Prison Rape Elimination Act ("PREA") Compliance Manager at Staton Correctional Facility, abruptly cancelled his PREA interview and failed to reschedule it. Doc. 1. He claims Defendant's refusal to investigate his PREA grievance constitutes retaliation in violation of the First Amendment; cruel and unusual punishment in violation of the Eighth Amendment; and a violation of due process and equal protection under the Fourteenth Amendment. *Id*. at 11–12. He seeks declaratory relief, injunctive relief, and monetary damages. *Id*. at 15–19.

On February 18, 2021, the Court issued an Order directing Defendant to file a Special Report addressing Plaintiff's claims. Doc. 5. On June 4, 2021, Defendant filed his Special Report (Doc. 20), in which he moves for dismissal and provides supporting

evidentiary materials (Docs. 20-1, 20-2). Thereafter, Defendant filed a Supplemental Special Report (Doc. 26) with additional evidentiary materials (Docs. 26-1 through 26-8). The Court directed Plaintiff to respond to Defendant's filings with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 22. Plaintiff filed a response to the Special Report (Doc. 23) as well as a response to the Supplemental Special Report (Doc. 27).

The Court previously notified the parties that, absent any objections, it may thereafter treat Defendant's Special Report and supporting evidentiary materials as a motion for summary judgment and, after considering any response by Plaintiff, rule on that motion in accordance with the law. Doc. 22 at 2–3. No objections were filed. Thus, the undersigned will now construe Defendant's Special Report as a motion for summary judgment and, for the reasons set forth below, RECOMMEND that judgment be GRANTED in favor of Defendant.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for

the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not

3

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III.  RELEVANT FACTS[1]

The following facts derive from Plaintiff's verified Complaint[2] (Doc. 1), the sworn evidentiary materials proffered by Defendant (Docs. 20-1, 20-2, 26-1 through 26-8), and Plaintiff's verified filings in response (Docs. 23, 27).

Plaintiff's Complaint, executed on January 20, 2021, provides that, on or around December 24, 2020, Plaintiff was "summoned to the administrative office hall" where Defendant and a woman awaited him in an office. Doc. 1 at 7. The woman "identified herself as a representative from PREA." *Id*. As Plaintiff "began his preamble, albeit a bit emotional in conveyance, [Defendant] suddenly bec[ame] angry with [Plaintiff] and order[ed] [Plaintiff] to remove himself from the interview and to leave [the hall], his . . . manner of verbal command unsuitable for the situation." *Id*. Thereafter, Defendant denied Plaintiff's request to reschedule the interview. *Id*. Defendant's interference with the PREA interview "left the original issue unresolved." *Id*. at 8.

In his Special Report, Defendant avers that the events described in the Complaint are completely fabricated. Plaintiff was never scheduled for a PREA interview on or around December 24, 2020 and, as the Institutional PREA Compliance Manager, Defendant would

---

[1] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[2] Attached to Plaintiff's Complaint are 25 exhibits (Docs. 1-1 through 1-25). The Court has reviewed Plaintiff's exhibits and determined that they are either irrelevant to the claims set forth in the Complaint, nonsensical, and/or unsworn and unverified pursuant to 28 U.S.C. § 1746. *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment.") (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)). In any event, none of the information therein alters the undersigned's below analysis or the outcome of this Recommendation.

have known if such an appointment had been scheduled or taken place. Doc. 20-1 at 1–2. To the contrary, Plaintiff never requested PREA services and was never referred to PREA services while incarcerated at Staton prior to the filing of this lawsuit. *Id*. at 2. Additionally, Staton has no female PREA representatives with whom Plaintiff could have spoken or scheduled an appointment. *Id*.

In response, Plaintiff maintains that the events described in the Complaint did in fact take place. Doc. 23 at 2. He notes that, although there is no female PREA representative at Staton with whom he could have spoken, if "[y]ou tell medical personnel or dial [the] PREA hotline, somebody is coming" and "Defendant hasn't furnished phone record[s] that [Plaintiff] didn't call the hotline." *Id*. at 6. He further notes that, since the filing of this lawsuit, Defendant still has not investigated Plaintiff's reported assault, "submitted any interviews he conducted," or "used his granted authorization to interview [Plaintiff]" in violation of PREA policy. *Id*. at 5. He reiterates, however, that he does not intend to state a claim under the PREA; instead, he believes this failure to investigate violated his First, Eighth, and Fourteenth Amendment rights.[3]

In his Supplemental Special Report, Defendant reiterates that there is no record of Plaintiff having made a PREA report at Staton or on the PREA hotline while incarcerated at Staton and that Plaintiff did not have an appointment or interview for PREA services on December 24 or any other time. Doc. 26-1 at 1–2. In support, he provides Plaintiff's

---

[3] *See* Doc. 23 at 3 ("[This] suit is NOT a PREA claim; it is a constitutional claim against an individual who happens to be the Institutional PREA Compliance Manager."), 8 ("This isn't a PREA claim."), 10 ("This is not a PREA case."), 11 ("Let's not be caught up on the participation of PREA.").

6

December 2020 institutional records, including medical and mental health records, which demonstrate the following:

On December 16, 2020, Plaintiff and another inmate were observed fighting in their dorm living area. Doc. 26-2. Both inmates were handcuffed, verbally reprimanded, and taken to the healthcare unit for a medical assessment. *Id*. While in the healthcare unit, Plaintiff reported no injuries from the fight but stated that he was suicidal. *Id*.; Docs. 26-3, 26-4. The decision was made to transfer Plaintiff to Kilby Correctional Facility to be placed on suicide watch and for mental health treatment. Doc. 26-5.

Upon arrival at Kilby, Plaintiff repeated that he was suicidal and "coming down off of ice." Doc. 26-6. No injuries were noted or reported. *Id*. Plaintiff was placed on suicide watch and, between December 16, 2020 and December 21, 2020, given mental health counseling and treatment. Doc. 26-7. On December 16, he reported that he "uses ice occasionally" and had not slept in days (*id*. at 3, 5) and, on December 19, his counselor noted that he "appear[ed] to be delusional" and disoriented (*id*. at 7). Throughout his time at Kilby, Plaintiff made no reference to a PREA incident at Staton, despite multiple opportunities to do so in medical appointments and private counseling sessions. *See generally id*.

On December 21, 2020, Plaintiff was transferred back to Staton, where he continued to receive mental health treatment. Doc. 26-8. Between December 22, 2020 and December 31, 2020, mental health professionals at Staton met with Plaintiff in a confidential setting on multiple occasions. *Id*. at 3–6. However, Plaintiff again failed to mention any PREA incident, failure to investigate a PREA incident, or denial of a PREA interview. *Id*. To the

7

contrary, on December 31, Plaintiff reported no issues and stated, "I'm doing better." *Id*. at 6.

In his response to the Supplemental Special Report, Plaintiff does not refute the medical evidence. *See generally* Doc. 27. Instead, he simply notes that he has "been in arm's distance" of Defendant several times a week since the filing of this lawsuit, and "Defendant never even spoke to Plaintiff, let alone asked a few questions for the sake of having conducted an interview." *Id*. at 3.

## IV. DISCUSSION

At this stage of the proceedings, the Court must accept Plaintiff's evidence as true and draw all justifiable inferences in his favor. *See Tipton*, 965 F.2d at 999. Although Defendant has proffered evidence that casts doubt on Plaintiff's version of events, when viewed in a light most favorable to Plaintiff, the undersigned finds that there is sufficient evidence in the record upon which a jury could find Plaintiff's version of events to be true—that Defendant failed to investigate Plaintiff's PREA grievance of which he was made aware. *See Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) (finding that the parties' dueling stories about the underlying incident presented "a classic swearing match, which is the stuff of which jury trials are made").

Courts have uniformly held that the PREA does not create a private cause of action.[4] However, Plaintiff contends that he does not intend to state a claim under the PREA.

---

[4] *See, e.g., Krieg v. Steele*, 599 F. App'x 231, 232–33 (5th Cir. 2015) (holding that "the PREA does not establish a private cause of action" and claims brought under the statute are "properly dismissed as frivolous"); *Gilley v. Wysinger*, No. 4:18-CV-910, 2021 WL 3910325, at *9 (N.D. Ala. July 28, 2021) ("[T]he PREA does not establish a private cause of action."); *Gibson v. Kent*, No. 3:15-CV-458, 2016 WL 7384646, at *2 (N.D. Fla. Nov. 18, 2016) ("Nowhere in the PREA is there language to suggest that part of

Instead, he maintains that Defendant's failure to investigate his reported assault violated his rights under the First, Eighth, and Fourteenth Amendments. Construing Plaintiff's claims in that manner, and accepting his version of events as true, the undersigned nevertheless finds that Defendant is entitled to summary judgment on each of these claims.

### a. To the extent Plaintiff seeks monetary damages from Defendant in his official capacity, Defendant is entitled to sovereign immunity.

Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Plaintiff seeks monetary damages from Defendant in his official capacity, Defendant is entitled to sovereign immunity.[5] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849

---

its purpose was to create a private cause of action or a federal right which could be enforced in a Section 1983 action. Thus, it has been uniformly held that the PREA does not create a private right of action whereby an inmate . . . may seek relief."); *Diamond v. Allen*, No. 7:14-CV-124, 2014 WL 6461730, at *4 (M.D. Ga. Nov. 17, 2014) ("PREA does not create a private cause of action for allegations of prison rape . . . or otherwise confer any extra rights outside of the normal prison grievance system[.]").

[5] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Carr*, 916 F.2d at 1525 n. 3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983.").

(11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995).

> **b. Plaintiff has failed to establish a genuine issue of material fact as to a First Amendment retaliation claim.**

Actions of prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986). To state a viable retaliation claim, Plaintiff must demonstrate that he engaged in speech that was constitutionally protected, that he suffered an adverse action that would likely deter a person of ordinary firmness from engaging in such speech, and that there was a causal relationship between the retaliatory action and his protected speech. *Hall v. Adm'r, Fla. Civ. Commitment Ctr.*, No. 21-13160, 2022 WL 4100705, at *1 (11th Cir. Sept. 8, 2022) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Regarding his retaliation claim, Plaintiff states:

> Defendant's direct order for termination of Plaintiff's PREA interview for no compelling reason is . . . passive-aggressive intimidation for exercise of Plaintiff's right to seek redress from the prison through the use of the prison grievance system; thus, [D]efendant is retaliating against Plaintiff unlawfully.

Doc. 1 at 12. First, other than his own conclusory and speculative assertions, Plaintiff proffers no specific facts supporting his belief that Defendant's failure to investigate was motivated by retaliation. *See, e.g., Frye v. Snider*, No. 2:20-CV-415, 2020 WL 5946427, at *2 (M.D. Fla. Oct. 7, 2020) ("A prisoner must show more than his personal belief that

10

he is the victim of retaliation.[] And conclusory allegations of retaliation, without more, cannot state a claim of retaliation.") (citations omitted).

Second, courts have routinely held that mere failure to investigate a claim, absent any resulting harm, does not constitute an adverse action likely to deter a person from engaging in protected speech. *See, e.g., Jones v. Medlin*, No. CV-213-40, 2012 WL 5025309, at *7 (S.D. Ga. Sept. 10, 2012) (finding defendant's failure to adequately investigate plaintiff's PREA grievance did not constitute an adverse action and noting that it did not deter plaintiff from exercising his First Amendment rights or cause him to suffer any consequences at all).[6] Notably, the Eleventh Circuit has come to the same conclusion in the employment context. *See Entrekin v. City of Panama City Fla.*, 376 F. App'x 987, 995 (11th Cir. 2010) (holding failure to investigate plaintiff's complaints against two individuals were "not adverse employment actions, because these actions were not taken against [the plaintiff] herself" and "[the plaintiff] herself suffered no harm").

Persuaded by the above holdings, the undersigned finds that Defendant's failure to investigate Plaintiff's PREA grievance in this case does not constitute an adverse action. Indeed, there is no evidence before the Court suggesting that Defendant's inaction deterred

---

[6] *See also Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 281 (N.D.N.Y. 2018) (finding official's failure to document or investigate plaintiff's assault claims did not constitute an adverse action and noting that "failure to investigate a complaint cannot be considered an adverse . . . action taken in retaliation for the filing of that same complaint" because it "will not ordinarily constitute a threat of further harm[.]") (citing *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721–22 n. 8 (2d Cir. 2010)); *Kuhn v. United Airlines*, 63 F. Supp. 3d 796, 802–03 (N.D. Ill. 2014) ("[T]he Second and Tenth Circuits have held that failure to investigate a complaint, where the protected activity at issue is the making of the same complaint, does not constitute an adverse action.[]  This is because 'a failure to investigate a complaint, unless it leads to demonstrable harm, leaves an employee no worse off than before the complaint was filed.'") (citing *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640–41 (10th Cir. 2012); *Fincher*, 604 F.3d at 721).

Plaintiff from engaging in further protected speech or that it resulted in any demonstrable harm to Plaintiff.[7] Accordingly, absent evidence of retaliatory animus or an adverse action that caused Plaintiff harm, Defendant is entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

### c. Plaintiff has failed to establish a genuine issue of material fact as to an Eighth Amendment failure to protect or deprivation of medical care claim.

Plaintiff next claims that Defendant's failure to investigate his PREA grievance constituted cruel and unusual punishment, and he notes that prison officials have a duty to protect prisoners from violence and provide prisoners with adequate medical care. Doc. 1 at 11, 13–14. The Court interprets these statements as attempting to state a failure to protect and deprivation of medical care claim under the Eighth Amendment.

To prevail on an Eighth Amendment failure to protect claim, Plaintiff must satisfy three elements:

> First, [he] must show that [he] was "incarcerated under conditions posing a substantial risk of serious harm." [*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)]. Second, [he] must show that the "prison official [had] a sufficiently culpable state of mind," amounting to "deliberate indifference." *Id*. (internal quotation marks omitted). Third, and finally, [he] must demonstrate causation—that the constitutional violation caused [his] injuries. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).

---

[7] Several times throughout his Complaint, Plaintiff vaguely asserts that Defendant caused—or "potentially" caused—him emotional distress. *See* Doc. 1 at 8, 10, 11. He does not, however, provide any specific factual detail explaining how or why Defendant's actions caused him such distress or demonstrating the extent of his distress. As such, these bare and conclusory allegations have no probative value at the summary judgment stage. *See Owens v. Sec'y of Fla. Dep't of Corr.*, 812 F. App'x 861, 870 (11th Cir. 2020) (citing *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("[The Eleventh Circuit] has consistently held that conclusory allegations without specific supporting facts have no probative value.")); *see also, e.g., Munoz v. Citimortgage, Inc.*, No. 8:20-CV-2311, 2021 WL 510244, at *3 (M.D. Fla. Feb. 11, 2021) ("Stating in a conclusory fashion that the alleged RESPA violations caused the [plaintiffs] emotional distress—with no supporting factual basis—is insufficient.").

12

*Cox v. Nobles*, 15 F. 4th 1350, 1358 (11th Cir. 2021). A finding of deliberate indifference requires that the defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [and that he] also draw the inference." *Farmer*, 511 U.S. at 837; *see also Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (reiterating that "a prison official cannot be found liable under the Eighth Amendment . . . unless [he] knows of and disregards an excessive risk to inmate health or safety").

Plaintiff has failed to demonstrate both that Defendant acted with deliberate indifference and that Defendant's failure to investigate caused him injury. First, the Eleventh Circuit has made clear that "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000); *see also Losey v. Warden*, 521 F. App'x 717, 719–20 (11th Cir. 2013) (holding prisoner's allegation that correctional officers failed to follow procedures regarding an official count of inmates and thus failed to protect him from assault by a fellow inmate did not rise to the level of deliberate indifference and instead was, at most, a form of negligence). There is simply no indication in this record that Defendant's failure to follow PREA grievance procedures put Plaintiff at substantial risk of serious harm or that Defendant was aware of any such risk; indeed, as far as the Court can discern, the record does not disclose any information regarding Plaintiff's underlying assault, such as when and where it occurred, the identity of his assailant, or whether his assailant posed a future threat to him.[8]

---

[8] In his Complaint, Plaintiff states:

Second, it is clear that Defendant's failure to adequately investigate Plaintiff's PREA grievance *after* Plaintiff's reported assault did not cause the assault, *see Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015) ("[A] single failure to investigate an incident cannot have caused that incident."), and there is no evidence that such failure resulted in any further harm to Plaintiff or was likely to result in further harm to Plaintiff. Again, there is no evidence from which the Court can discern whether Plaintiff's alleged assailant posed a future threat to Plaintiff, much less a threat of which Defendant was aware. Accordingly, having failed to provide evidence of both deliberate indifference and causation, Defendant is entitled to summary judgment on Plaintiff's Eighth Amendment failure to protect claim.

Similarly, to prevail on an Eighth Amendment deprivation of medical care claim, Plaintiff must demonstrate (1) an objectively serious medical need; and (2) deliberate indifference to that need. *Bingham v. Thomas*, 654 F.3d 1171, 1175–76 (11th Cir. 2011). Plaintiff's bare assertions that the State must provide psychiatric and mental health care to

---

> [Defendant's] rank and designation as PREA Director . . . is actual-knowledge of specific risk to [Plaintiff] from a specific source; the summons of [Plaintiff] to [the PREA interview] demonstrates [Defendant] knew of a substantial risk from the very fact that the risk was obvious, thus [Defendant's] failure to allow proceeding to take place—coupled with denial of a rescheduling—shows [Defendant's] deliberate indifference towards the deprivation of [Plaintiff's] reasonable safety.

Doc. 1 at 8–9. However, the Eleventh Circuit has specifically held that a PREA violation does not violate the Eighth Amendment *per se*. *Cox*, 15 F. 4th at 1361 ("We find no authority to support the proposition that a litigant can circumvent long-established Eighth Amendment jurisprudence by alleging a violation of the PREA in a conclusory fashion."). Rather, when the record wholly fails to demonstrate any specific knowledge a defendant had regarding a risk to the plaintiff, the plaintiff cannot prevail on an Eighth Amendment failure to protect claim. *See id*. at 1362 ("Although we have no doubt that PREA documents *could* put prison officials on notice of a substantial risk of serious harm to an inmate, in this case [plaintiff] failed to allege anything to help us discern what the PREA documents said. Thus, she failed to allege that those documents made prison officials subjectively aware of a substantial risk of serious harm. So, considering [plaintiff's] PREA allegations in the context of our traditional Eighth Amendment inquiry, we must reject her claim.").

prisoners wholly fails to demonstrate that he personally suffered from an objectively serious medical need, as do his vague assertions of emotional anguish without any supporting factual detail. *See, e.g., Owens*, 812 F. App'x at 870; *Munoz*, 2021 WL 510244, at *3.

Moreover, even if he had established the existence of such a need, the record again fails to indicate that Defendant was deliberately indifferent to that need. There is simply no evidence that Plaintiff conveyed a serious medical need to Defendant or that Defendant denied or delayed him medical treatment therefor. To the contrary, Plaintiff's undisputed medical records demonstrate that he was provided considerable medical and mental health treatment throughout December 2020. *See* Docs. 26-5 through 26-8. Accordingly, Defendant is entitled to summary judgment on Plaintiff's Eighth Amendment deprivation of medical care claim.

### d. Plaintiff has failed to establish a genuine issue of material fact as to a Fourteenth Amendment due process claim.

To the extent Plaintiff seeks to bring a substantive due process claim, he must have a substantive right created by the Constitution. *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002). However, Plaintiff "has no substantive right of any kind to an investigation of his [PREA] claim[,] much less one created by the Constitution." *Edler v. Schwarz*, No. 5:08-CV-275, 2010 WL 3211941, at *12 (N.D. Fla. May 13, 2010) (citing *Vinyard*, 311 F.3d at 1356 (holding inmate had no constitutional right to an investigation following an incident of alleged excessive force)); *see also Jones*, 2012 WL 5025309, at *6 ("Notably, the PREA itself seeks to compile data and statistics concerning incidences

of prison rape and to adopt standards to combat the same, and does not confer upon Plaintiff any extra rights outside of the normal prison grievance system.") (citations omitted).

To the extent Plaintiff seeks to bring a procedural due process claim, Plaintiff must have a protected liberty or property interest of which he was deprived. *Vinyard*, 311 F.3d at 1356 (citing *Zipperer v. City of Fort Myers*, 41 F.3d 619, 623 (11th Cir. 1995)). However, Plaintiff has no liberty interest in the investigation of a grievance. *See Bingham*, 654 F.3d at 1177 ("[A]n inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure."); *Thomas v. Warner*, 237 F. App'x 435, 437–38 (11th Cir. 2007) ("We agree with other circuits that have decided that a prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure."); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (finding inmate "[did] not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction" and, therefore, "any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless").

Accordingly, because Plaintiff has no constitutional right to or liberty interest in a PREA investigation, Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment due process claim.

### e. Plaintiff has failed to establish a genuine issue of material fact as to a Fourteenth Amendment equal protection claim.

To overcome summary judgment on an equal protection claim, a plaintiff must generally demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on race, religion,

national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001). Alternatively, a plaintiff may show a "class of one" equal protection claim by demonstrating that he was "intentionally treated differently from others who were 'similarly situated' and that there is no rational basis for the difference in treatment." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1263–64 (11th Cir. 2010). To be similarly situated, the comparators must be prima facie identical in all relevant respects. *Id.* (citations omitted).

Plaintiff has failed to establish either a traditional equal protection claim or a "class of one" claim. First, Plaintiff neither alleges nor provides any evidence that he suffered discriminatory treatment based on race, religion, national origin, or any other constitutionally protected basis. *See Jones*, 279 F.3d at 946–47. To the contrary, he avers that his PREA interview was cut short and not rescheduled because Defendant "bec[ame] angry" with Plaintiff's "emotional preamble" (Doc. 1 at 7), which does not constitute a protected basis. Moreover, he has wholly failed to demonstrate the existence of other similarly situated inmates, prima facie identical to him in all relevant respects, to whom he was treated differently.

Accordingly, because Plaintiff's "[c]onclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient," *Stearns-Miller v. McNeil*, No. 3:07-CV-222, 2008 WL 4164110, at *8 (N.D. Fla. Sept. 5, 2008) (citing *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1367–68 (11th Cir. 1998); *Coon v. Georgia Pac. Corp.*, 829 F.2d 1563, 1569 (11th Cir. 1987)), Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment equal protection claim.

**f.      To the extent Plaintiff seeks to bring any state law claims, the Court should decline to exercise supplemental jurisdiction.**

Finally, throughout his Complaint, Plaintiff makes vague references to various state law claims such as negligence, extortion, and emotional distress. *See generally* Doc. 1. However, because Plaintiff has failed to demonstrate a 42 U.S.C. § 1983 claim against Defendant, the Court should decline to exercise supplemental jurisdiction over any purported state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Arnold v. Tuskegee Univ.*, 212 F. App'x 803, 811 (11th Cir. 2006) ("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims.") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)); *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.").

**V.     CONCLUSION**

Accordingly, based on the foregoing, the undersigned RECOMMENDS that:

1.      Defendant's Special Report (Doc. 20), which the Court construes as a motion for summary judgment, be GRANTED;

2.      Judgment be ENTERED in favor of Defendant; and

3.      This case be DISMISSED with prejudice.

It is further ORDERED that, on or before **February 6, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual

findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 23rd day of January, 2024.

/s/ Stephen M. Doyle
STEPHEN M. DOYLE
CHIEF UNITED STATES MAGISTRATE JUDGE